All right, Ms. Vega, we're ready when you are. No worries. No worries. I have a lot of stuff I want. We want you to have all your stuff. We're always intrigued when people haul all that stuff over here, and we're wondering how in the world they're going to manage to use it, so. It's probably a crutch for me, Your Honor. This is my second time before this Court, so. Good morning. May it please the Court. We're here today because Mr. Nyandoro tried to resolve these issues before the District Court. The District Court told him no. At the time that the District Court made that decision, however, it did not have the benefit of precedent that this Court is going to have to apply in order to decide the issues presented. The first issue being whether Mr. Nyandoro—I'm sorry. The first issue being whether the District Court erred in accepting Mr. Nyandoro's guilty plea, and the second issue being whether the District Court abused its discretion when it disallowed an opportunity to withdraw the plea. At the conclusion of the proceedings below, Your Honors, we did not have two critical cases that are germane to these issues, United States v. Connolly and United States v. Daniels from this Court. What those cases stand for is that when it comes to 922G3, proof of the statutory elements is insufficient to prove that this nation's history and tradition supports Mr. Nyandoro's disarmament. What swings the pendulum from constitutionally protected to criminal conduct, according to those cases, is active intoxication. The Court took its actions below without considering the government's burden of proof on this point. So when it took the guilty plea, it did not advise Mr. Nyandoro on this burden of proof, and it did not consider the evidentiary void in the record on this burden of proof, either at the plea stage or at the withdrawal of dismissal—I'm sorry, or at the withdrawal of the guilty plea stage. For those reasons, the Court erred on those both points, and we are asking this Court to rectify those errors, to vacate Mr. Nyandoro's conviction, and remand for further proceedings below. At this time, I'm happy to take the Court's questions, or I can continue with my first point. Are you saying he wasn't intoxicated, or are you just saying that the evidence wasn't presented to the district court? There was a lot of that. I'm saying that this Court cannot confidently look at the record and say that he was intoxicated at the time of the offense. And I say that because the government points to a diagnosis that was done almost a full year after the offense was committed. So that diagnosis came in May 2022, I believe, and the offense date is July 2021. There was an admission of daily use at the time of the pretrial services interview. However, while that admission may, over the scope of time, lead one to say, okay, probably intoxicated at some point within the span of, let's say, a month or even a week, the evidence in the record that is specific to the critical point in time, which is when he was carrying that firearm that was found on his person, is, number one, the law enforcement had hands-on contact with him. At no point does law enforcement make any observation that he appeared intoxicated. The lack of observation in Connolly was taken as evidence that there was no proof of present intoxication. So I'm not asking the court to make a big inference here because the court made that inference from the same evidentiary void in Connolly. Second is that a day after the offense, law enforcement interviewed Carmack, Brandon Carmack, I believe was his name, who was an individual who was with Mr. Neodoro at the time of the  That individual was found with some marijuana in his backpack. So I think it's safe to presume that the person used marijuana. He says that Mr. Neodoro and him were in the room together in Mr. Neodoro's residence and then left from there. At no point did he say, we got high. He does not say that. Now, the record does indicate that he said the room smelled of marijuana, but that's why we have no smoking policies sometimes in hotel rooms. Just because a hotel room that I'm staying in smells like smoke doesn't mean that I smoked in there. It could have been somebody a week before. So I don't think that the evidence is there to show that he was presently intoxicated. I don't think the record shows that. I don't know if there are other further questions on that point. No. Okay. All right. However you've identified. Okay. All right. All right. So since the court has asked me on questions, well, actually, that question is germane to both issues because the abuse of discretion, I'll stay with the abuse of discretion and the denial of the motion to withdraw for a second. I think the district court abuses discretion. All right. So let's start. Yes. I think the abuse of discretion can be found because the district court acted under an erroneous view of the law. And by that point, I mean at the district court. The district court at the sentencing is where it issued its ruling on the motion to withdraw the guilty plea. Well, the motion to withdraw was filed, what, 10 months after the guilty plea, right? Give or take? The motion to withdraw was filed March 31st, 2023, Your Honor. And the guilty plea, I think, occurred in June 2022. Yes. Yes. I think what's relevant on, it seems like Your Honor wants to discuss the timeline. I think what's important on that timeline is that the premise of the motion is the history and tradition piece. Granted, the history and tradition test was announced in Bruin, which was actually issued, I believe, the exact same day that the guilty plea was accepted. But critically, this court had not decided what Bruin meant for its 922G3 jurisprudence until United States v. Rahimi, which was issued March, well, an initial opinion February 2nd, but then it was reissued March 3rd, 2023. And the mandate was not issued until March 24th. And so from March 24th to March 31st is really the delay that I think is relevant for the car factors. That said, irrespective of the delay, the car factors is a totality of the circumstances analysis. And there are three factors that the district court improperly evaluated and improperly considered, albeit through no fault of its own. The district court did not have Connolly. It did not have Daniels. And so it evaluated— Stop. Let me slow you down. Let me— Yes. Let me see if I truly understand exactly what you're saying. Number one, he started with an abuse of discretion, all right? So are you saying as a timeline, he didn't move the withdrawal because the law changed in the interim? If he had known later—known earlier what he knew later vis-a-vis the law, are you saying that was the primary catalyst for wanting to withdraw the guilty plea, a change in the law? I think what I—no. I'm not trying to put words in your mouth. Yes. I'm just trying to understand because, see, you're arguing— Yes. It means supervening, changes of law, et cetera. And I'm trying to hook that up with abuse of discretion. You follow what I'm saying? Yes. Because you don't sound like you're arguing something that as a matter of law, you know, what he pled guilty to wasn't a crime. And so when we say abuse of discretion, then I want to know, well, where did the trial judge go wrong? And based on that, you said, well, the judge had an erroneous understanding of the law. Quote, it perked—my ears perked up. So I'm trying to stay with you of where this derailed— Yes. —to be the changes in the law. So with respect to the Court's first question, it's not solely that there was a change in the law. It is that the law changed in a way that altered the fundamental nature of the offense. So if a district court today took a 922G3 guilty plea and solely advised the way that the district court advised below, I don't think it's disputed that that would be problematic because that's what the jury was instructed on in Daniels, and that wasn't sufficient in Daniels. So we know that's not sufficient below. So I wanted to just refer to that. In terms of where the district court went off the rails, in terms of its understanding of the law—and again, I don't mean to demean the district court. This wasn't the district court's fault. But below, the government made various points on the merits of the claim of innocence that we know today are wrong. So the first point is—just one second, Your Honor—is that it relied on Patterson. Daniels is pretty clear that Patterson, which was the 922G3 case that preceded Bruin, Rahimi, all these lines of cases, that instructing a jury based off of Patterson is insufficient now. So we know that. Patterson also—actually, let me just move on from that point. The other thing— Can I interrupt you for a second? Yes, Your Honor. And forgive me if I missed this in your briefing. So a year ago—almost a year ago, exactly—this court decided a case called U.S. v. Miles. Are you familiar with that case? It does not ring a bell, but I will try to answer the court's question. Defendant pleaded guilty to possessing an unregistered short-barreled rifle in violation of—I think it was 5861D—waived his right to appeal. He then argued on appeal that the statute was unconstitutional under the Second Amendment as applied to his possession of a short-barreled rifle. We held the waiver foreclosed his claim, and I wondered how your constitutional challenge to 922G3 was meaningfully different than his constitutional challenge to the other statute. So, I apologize that I am not familiar with that case, Your Honor, but I think I can answer the court's question. Here we are not making a standalone constitutional claim. Here what we are making is a claim based off of the knowing involuntariness of the guilty plea, and it boils down to this. The burden of proof was too low. The court advised Mr. Neodora of a burden of proof that was too low, and so that cannot be intelligent. That cannot be an intelligent plea per Bousley. The other claim that we are making is a claim based off of the facts on which the district court acted. Let me ask you this. Putting aside the constitutional challenge, are you arguing that your client's conduct just failed to meet the statutory elements of 922G3? I am arguing that my client's conduct does not fall within the ambit of what is criminal, because what is criminal is not defined solely by the statute. It's defined by the statute and the history and tradition. And in Daniels, the jury was not instructed on the facts that were relevant to the history and tradition piece, and that was enough for this court to reverse the conviction and remand for further proceedings. That's what I'm asking for here, Your Honor. So when we're looking at whether there is a factual basis for the guilty plea, are we, as an appellate panel, are we confined to the factual resume, or can we look at other uncontested facts in the record? I think that depends on—I think the short answer to that is yes, but there's— Yes to what part? Yes, the court can look to the entirety of the record, but if I can just qualify that. If there is a standard review of de novo, which is what we are arguing on the factual sufficiency piece, then that only becomes relevant, the entirety of the record, my understanding is, only becomes relevant in a harmlessness analysis. If the government is right that plain error applies, which I don't concede, I believe that this error is preserved, but if the government is right that it's plain error, then the effect of substantial rights portion, so it's a very similar analysis, the burden of proof is just different, the court can look to the rest of the record. But I think he went—Mr. Neodort, we went under either standard of review on that point. That said, Your Honor, I don't think you have to reach that here, because I believe, Your Honor, is the one who wrote Utah v. Sue and talked about the appellate doctrine of discretionary remand. I think the motion to withdraw and the court's consideration of the motion to withdraw is ripe for that kind of resolution. The district court, simply put, did not weigh and did not really evaluate three critical car factors, the knowing involuntariness of the plea, the claim of innocence, and the judicial resources factor, with an understanding that there was a credible claim of constitutional immunity, that there was a credible claim of prejudicial Rule 11 error, and that there was a possibility of acquittal. Let me stop you there, because I have two questions. Yes. I'll back up. I just want to understand about this waiver of appeal, because Judge Willard just asked you, now, if I'm correctly understanding, and the government can correct me, in this instance, the government is not asserting the waiver as a bar, and I'm not sure in the other cases, often, the government is saying this is barred by the appeal waiver. If I understand this case, not mixing it with something else, the government is not arguing, the argument is foreclosed by the waiver. The government is arguing that the car factors, which you're arguing now, weigh on their side, but counsel will correct me if I have it wrong, but normally, we have the government coming and saying, King's X, this is bound by the waiver, et cetera, et cetera, if I'm understanding it right, but when he comes up, he can correct me, and then my question for him is going to be, just because they don't assert it, does our case law, nonetheless, put us there, if we read the waiver as saying that it is barred, notwithstanding that the government wants to ride in on that horse. That's a setup for him, and when you come back, rebuttal about this waiver, because if we hold that it's barred, we're never going to get to the finer points. You follow what I'm saying? We're not going to get to the finer points of some of these other issues. We say that this is barred, but like I said, the government isn't organized, so maybe we get to it. Number two is just, you can answer when you come back, I'm still hung up on, not hung up, that's not a good word. It's just that so much of this, you're saying it's abuse of discretion, but you just seem to be arguing something stronger than that, almost as if you're arguing, in some instances, there was an error as a matter of law, and thus, your answer, you can say it for later, but I'm just trying to understand, I hear all you're saying, but the standard review becomes very, very important, and our cases say, the court determines the standard review, not the lawyers. When you come back up, just be prepared, the latest sounds straight, because if we're remanding based on an error of law, that's one thing, but it's a whole different question if we're writing to say, this judge abused his or her discretion because of X. Do you follow what I'm saying? That's because you've got two sets of claims, the bar, the waiver, and then your other one, if we're going to get all into the car factor. You with me? Yes, Your Honor. Would you like me to save that for rebuttal? I'll just save it for when you come back, but I didn't want to catch you off guard. I'm saying I heard you, but I'm still really stuck about this, what is the abuse of discretion? Just because the judge didn't do X, doesn't make it reversible, but that's a horse for a different color, if as a matter of law, based on later supervening case law, that we need to send it back, and it's just not clear to me from the briefs or exactly argument which way to go, but we'll figure it out. You have your rebuttal time. We'll hear from the governor. Thank you, Your Honor. All right. Mr. Bradshaw. Thank you, Judge Stewart. May it please the Court, John Bradshaw for the United States. I'm going to skip my canned opening and start right where you invited me to start with, what do we do about the appeal waiver, and what claims is the government asserting the appeal waiver bars, and what's not? The as-applied constitutional challenge, all the constitutional challenge, so the Second Amendment challenge, the Fifth Amendment vagueness challenge, the foreclosed commerce clause challenge, those are all barred by the appeal waiver. The only claim that we have not asserted the appeal waiver against is the different claim that the district court abused its discretion in not allowing Mr. Nyandar to withdraw that guilty plea. Constitutional claims waived. Carr claim, this Court should review. Judge Stewart, you asked how long had it been after Judge O'Connor accepted the guilty plea until the motion to withdraw was filed. It was 281 days. This Court in Carr said 22 days is a significant delay, and what this Court made clear in Carr is that the purpose of a motion to withdraw the guilty plea is not to allow the defendant to plead guilty and then sit on his hands and wait and see if he made a reason, like a good strategy, a good tactical choice. What it is is to where you realize your plea was unknowing or involuntarily entered, you can jump up and say, Your Honor, I pled guilty, but it turns out I shouldn't have. In this case, we're in the tactical and the strategic camp. You asked Ms. Vega a question about what motivated Mr. Nyandar to seek to withdraw his guilty plea. And I think to really understand the answer to that question, it's important to place this entire prosecution in context, because this is not a typical prosecution or even a typical plea agreement that we see in the Northern District of Texas very often. So Mr. Nyandar violated 922G3. He violated the statute. He was indicted by a federal grand jury for that violation. And typically, once the motion to dismiss stage has passed, a defendant has two options. He can go to jury trial, or he can plead guilty with a guaranteed sentencing in front of a federal district judge. In this case, Mr. Nyandar, aided by very able counsel, actually negotiated a third type of resolution. He entered a guilty plea contingent on his enrollment in a program called STEPS. It's Sentencing to Equip People for Success. And had he successfully completed that STEPS program, the government would have joined him in a motion to withdraw the guilty plea, and it would have dismissed his indictment. So it was not until Mr. Nyandar went through about six months of STEPS and then failed out of that program, and then he saw the PSR that had a higher guideline range than he thought was going to apply, that he first moved to withdraw his guilty plea. He failed the program because he was using drugs again, right? That's correct, Your Honor. So we have the complaint in the record about what happened the night of that traffic stop. But he's pulled over shortly after midnight, right before Christmas. He's been in the program about six months. And the police officers suspect that there's been drug use. They smell an air freshener that typically covers that kind of odor, and they see a suspicious backpack. And so what they do is they say, can you please step out of the car? And he says, well, am I under arrest? And they say, no, but please step out of the car. And instead of doing that, he puts it in drive and he flees. He drives over 100 miles an hour, leading law enforcement on a high speed chase, which they ultimately discontinue for reasons of policy and officer safety. And then when police later find him at his home, they find trace amounts of drugs that he admits were his. So yes, Your Honor, that is right. There's also been some discussion about, well, let's stay with CARP for a second. So Judge O'Connor had broad discretion to rule on this motion to withdraw the guilty plea. And Judge O'Connor did not abuse that discretion. Judge O'Connor correctly weighed the delay against Mr. Nayandaru. Judge O'Connor accepted that his assertion of legal innocence may weigh in his favor, but even still, it said on the balance of the car factors, they do not permit withdrawal of the guilty plea. And we think that Judge O'Connor got it exactly right. They have not successfully pointed to an abuse of discretion. I will just say, the idea that a judge necessarily abuses its discretion when new Fifth Circuit case law comes out after the car motion has been decided is nowhere in this court's case law. And I don't think it can work that way because a judge deciding the motion to withdraw in the first instance has to decide it with the law as it exists. And so to that point, we disagree. Now, on the constitutional claims, they are waived. So Judge Willett, you mentioned the Miles case. In our brief, we cited the Jones case. So Jones was an as-applied challenge to a 922 G3 conviction under the Second Amendment. And this court held that a materially identical waiver from the Northern District of Texas barred that constitutional challenge. That waiver in this case bars that challenge here. This court in Barnes made clear that the government has a legitimate interest in the finality of its convictions and in the enforcement of its waivers. And both of those interests here weigh in favor of enforcing that waiver and dismissing the constitutional claims as waived. Even if we look to the merits of the constitutional claims, they still fail. So Judge Clement, you asked counsel, what does the record suggest about whether Mr. Nayandaro was under the influence at the time he was in possession of the stolen firearm? As Ms. Vega mentioned, the PSR indicates that during his pretrial services interview, Mr. Nayandaro admitted to smoking marijuana every single day. If you actually go look at that pretrial services interview, it says he had not smoked since the day after his arrest. Which means he did smoke on the day of his arrest. Moreover, the factual basis that was submitted to this district court and supported this plea also strongly suggest that Mr. Nayandaro was under the influence at the time. And in particular, I'm looking at ROA 314. And in that, as I mentioned at the outset, this plea agreement is atypical because typically what we have in a plea agreement case, we have a plea agreement and a factual resume, and that's the only factual basis before the district court to decide whether to accept the plea or not. Here, at ROA 313, we had another document signed by Nayandaro's counsel and signed by the government. And it's called the Agreed Guideline Estimate and Basis for Admission to STEPS Program. And in that document, counsel says from Mr. Nayandaro, excuse me, all the statements in this notice are relevant facts that both the government and the defendant agree the court should be made aware of to make determination on the defendant's acceptance into the STEPS program. Then that document goes and lays out all of the details that were in the criminal complaint and more. But the one I really want to flag, or there are a couple I want to flag for the court. So ROA 315, and again, these are stipulated facts. Mr. Nayandaro's friend noticed, he asked Mr. Nayandaro for a ride. Mr. Nayandaro picked him up and brought him back to his house. At that point, he walks in Nayandaro's bedroom and he tells police, he smelled the odor of marijuana. Now, that is strong evidence that Mr. Nayandaro had recently smoked that marijuana. We all know that if you're walking to court this morning and you sort of come across a wave of marijuana that you smell, it's because it's been recently smoked. Now, when you take that fact and couple it with his admission to probation that he had used every day since the day of his arrest, or the day after his arrest, excuse me. There is no legitimate question in the government's view that Mr. Nayandaro was presently intoxicated at the time he was firing the pistol that had been stolen from the police department. Under Connolly and Contreras and Daniels, that conduct is not protected by the Second Amendment. It is a very interesting factual question. Unfortunately for Mr. Nayandaro, it is all waived. We are strongly asserting our waiver on that point, and we would ask the court to enforce it. If the court has any further questions, I'm happy to delve into any part of the record of the case law, but seeing none, I'll rest the balance of my time. Thank you all very much. Thank you. Thank you, sir. All right, Ms. Vega, back for rebuttal. Yes, Your Honor. Okay, so I want to pick up, there's a lot of things that I would like to cover, so I'm going to try to go quick. I want to pick up on the court's question about the abuse of discretion. We are arguing that the court made an error as a matter of law, and that that matter of law infected consideration of three of the car factors, the waste of judicial resources, the knowing involuntary plea, and the claim of innocence. And that that resulted in an erroneous view of the law that is an abuse of discretion. This court's case law, and unfortunately I don't have the site, but this court's case law does say that an abuse of discretion results when the district court acted under an erroneous view of the law. That said, Your Honor, what the district court did not decide, because it couldn't, because it didn't have Connelly, it didn't have Daniels, is again, is a credible claim of constitutional immunity, is that a fair and just reason for allowing withdrawal? Is a possibility of acquittal if the person goes to trial, is that a fair and just reason for allowing withdrawal? Is a prejudicial rule 11 error a fair and just reason for allowing withdrawal? Those are questions that the district court never got to, and that's why that erroneous view of the law is what's really driving our abuse of discretion argument. I mean, that is the core of the argument. Now, I'll raise a couple of things that my opposing counsel touched on. So, this court has focused on the delay. That is just but one factor of the Carr factors. And Carr itself also talks about what is the reason for the delay. And counsel likes to paint that the reason for the delay was a tactical decision. That's not true. March 24th, 2023 was the day that the mandate issued in Rahimi, and that's when there was a true understanding of the nature of the elements of the offense here. That the statute was not enough, number one. Number two is that- 20 months is a long, long time. I mean, generally speaking, as you said, the whole nature of pleading guilty, you plead guilty. But 20 months is, I'm not saying the case turns over a period of time, but that is a long time. I think the reason behind the delay is also important, Carr says that. That the reason behind the delay is an important consideration when evaluating that factor. Here is. The nature of the element, the nature of the offense did not come clear until that point. Because Bruin's history and tradition test, Rahimi did not apply that to firearm precedent until that point. And it applied it specifically to Emerson. It said, Emerson is wiped clean by Bruin. Patterson relied on Emerson. Until that happened, there was Fifth Circuit law that the district court would have- Played guilty last year to something. Supreme Court issues something, you know, a crime of violence, defines it. Well, just because it happens next year, they don't get to honor if all those guilty pleas because the law changed after they pled guilty, do they? That's second seeing, your honor. Here, the law changed with regard to the nature of the offense. And Boosley versus United States is on point with that. And Boosley versus United States explains why it renders a guilty plea unintelligent. Because the change in the law is specific to the nature of the offense. I think here, the change in the law is a distraction. The question really is, would the advisal today, because the district of this court needs to apply the law as it applies today. Would the advisal today be sufficient? Let me jump to your argument about whether your client's plea was knowing and voluntary. So he received, I think you would agree, a pretty favorable plea deal. Which would have resulted in complete dismissal of his conviction, right? I think it's not favorable given what we know now. Is it correct that you challenged the plea only after he failed to fulfill his part of the agreement in completing the steps program? Yes, but Rahimi issued only after that happened, Your Honor. So yes. Okay, so it's driven by Rahimi and that sort of upending the legal landscape. And not just the legal landscape, but the nature of the offense. Okay. It's the nature of the offense. I wanted to touch on a couple of, and actually, that type of legal landscape ties into the waste of judicial resources. The court obviously focused on the resources that had been invested with respect to- You've got a red light. I'm going to let you- Oh, I'm sorry, Your Honor. Let's finish here. I mean- I didn't realize. Let's not go to another argument. Do you want to complete your statement?  Go ahead. Thank you, Your Honor. I apologize for that. The waste of judicial resources, the court only considered the resources that had been invested up to that point because it did not recognize the credibility of the constitutional claim. Even the government stated that. It said it was, quote, an interesting question. Because the court did not consider the credibility of that claim on the other side of that scale, that's another point where an abuse of discretion occurred, an error occurred. All right. That's my time. Thank you, Your Honor. The case will be submitted. The third case we'll take up is 24-